UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNA LINO, AS ADMINISTRATOR OF THE ESTATE OF EDWARD LINO )<br><br>                                        Plaintiff,  )<br><br>                    v.  )<br><br>THE CITY OF NEW YORK, STEPHEN CARACAPPA and LOUIS EPPOLITO,  )<br><br>                                        Defendants.  ) | AMENDED COMPLAINT<br><br>No. 06-CV-3591 (RJD) (JMA) |

## PLAINTIFF'S COMPLAINT

### JURISDICTION

Jurisdiction of this court is based upon 28 USC 1331, 1343 and 1367, and 42 USC 1983.

### VENUE

Venue in this court is proper pursuant to 28 USC 1391, as the cause of action occurred within the Eastern District of New York.

### THE PARTIES

1.  Plaintiff ANNA LINO ("LINO"), an individual residing in and a citizen of the state of Florida, was, on May 26, 2005 appointed Administratrix of the Estate of Edward Lino by the Surrogate's Court for the County of Suffolk, File #481 A2005.

2.  At all times hereinafter mentioned and prior thereto, and until his death on November 6, 1990, Plaintiff was married to and resided with Edward Lino (plaintiff's decedent")

3.  At all times relevant to this Complaint, plaintiff's decedent had five children, namely Edward Lino, Christopher Lino, Danielle Lino, Vincent Lino, and

Thomas Lino.

4. At all times hereinafter mentioned and prior thereto, and on and prior to the 6th day of November, 1990, the defendant, THE CITY OF NEW YORK ("CITY") was and still is a municipal corporation formed by and under the laws of the State of New York with its principal office located at 100 Church Street, New York, NY 10007.

5. Defendant STEPHEN CARACAPPA ("CARACAPPA") is an individual with a last known address within the federal penal system.

6. Defendant LOUIS EPPOLITO ("EPPOLITO") is an individual with a last known address within the federal penal system.

## BACKGROUND

7. In or about 1986, CARACAPPA and EPPOLITO obtained confidential information regarding a police investigation into an attempted murder of a member of organized crime which contained the names of individuals who were apparently involved in the incident.

8. At the time, EPPOLITO was assigned to the 63rd Precinct which is the same precinct where the incident took place.

9. CARACAPPA and EPPOLITO provided said confidential information to members of organized crime and subsequently agreed to abduct one of the persons named in the investigation and deliver him to members of organized crime.

10. Thereafter, the abducted individual was interrogated, tortured and killed by the members of organized crime but not before giving the name of Edward Lino as supposedly being involved in the attempted murder.

11. As a result, the member of organized crime arranged to pay a sum of money to CARACAPPA and EPPOLITO to murder Edward Lino.

12. On November 6, 1990, CARACAPPA and EPPOLITO stopped Edward Lino while he was operating his vehicle on the service road of the Belt Parkway in Brooklyn by driving a vehicle with a dome light on its roof and shortly thereafter shot him numerous times causing his death.

13. At all times relevant to the Complaint, defendant EPPOLITO was employed by the defendant CITY's New York City Police Department ("Police Department"), holding the rank of police officer and then detective therein.

14. In light of his position, EPPLITO had access to confidential information, including but not limited to information regarding investigations of crimes including the above referenced attempted murder investigation.

15. At all times relevant to the Complaint, defendant CARACAPPA was employed by the defendant CITY's Police Department ("Police Department"), holding the rank of police officer and then detective therein and was assigned ultimately to the Organized Crime Unit.

16. In light of his position, CARACAPPA had access to confidential Police Department information regarding investigations of crimes including the above referenced attempted murder investigation as well as information concerning organized crime.

17. Defendant CITY owed a duty of care to Edward Lino as it did to all citizens to be free from the criminal acts of its own upon the citizens they are obligated to protect.

18. EPPOLITO and CARACAPPA's actions were condoned and facilitated by grossly inadequate supervision and discipline throughout the entire Police Department.

19. The department-wide breakdown in supervision and discipline within the Police Department during the time periods that EPPOLITO and CARACAPPA commenced their criminal acts was well known. In the early nineteen-nineties, the Mollen Commission conducted a two year investigation. Ultimately, the Commission found customs and practices of systemic failures that facilitated large-scale corruption within the Police Department.

## COUNT I

20. At all times relevant to the Complaint, defendant CITY operated, managed and supervised the Police Department.

21. At all times relevant to the Complaint, defendants CARACAPPA and EPPOLITO were acting under color of law, statute, ordinance, regulation, custom or usage of the State of New York.

22. At all times relevant to the Complaint, defendant CITY knew that defendants CARACAPPA and/or EPPOLITO were connected to, had a relationship with, and were serving the interests of organized crime, including but not limited to said defendants utilizing the resources of, and their position in, the Police Department to cause or contribute to cause the deaths of members of the public.

23. Defendant CITY, by knowingly allowing defendants CARICAPPA and/or EPPOLITO to continue in their employment by the CITY's Police Department, to continue to have access to its resources, and to continue to hold themselves out

3

to the public as being members of said department, did, at all times relevant to the Complaint, tacitly or expressly consent, authorize and approve defendants CARACAPPA and/or EPPOLITO using their positions as members of the Police Department, under color of state law as aforesaid, to serve the interests of organized crime as aforesaid.

24.  On November 6, 1990, acting under color of state law as aforesaid, and in furtherance of the interests of organized crime, defendants CARICAPPA and/or EPPOLITO did use the resources and authority of the defendant CITY's Police Department to locate, detain and murder plaintiff's decedent on a service road of the Belt Parkway in Brooklyn, County of Kings, New York.

25.  As a direct and proximate result of their murder of plaintiff's decedent as aforesaid, defendants CARACAPPA and/or EPPOLITO did, under color of state law as aforesaid, deprive said plaintiff's decedent of his constitutionally and legally protected civil rights, privileges and immunities , including being deprived of his life, without due process of law in violation of 42 USC 1983.

26. Plaintiff Anna Lino, individually and as Administratrix of the Estate of Edward Lino, did not and could not reasonably have known that all or any of the defendants were involved as aforesaid or in any other way in the death of plaintiff's decedent until March 10, 2005 when such involvement was publicly announced by the United States Attorney's office for the Eastern District of New York.

27. As a direct and proximate result of the defendant's CARACAPPA and EPPOLITO's conduct as aforesaid, and as a direct and proximate result of defendant CITY's tacit or express approval or authorization of, and consent to, the conduct of its co-defendants as alleged above:

   a.  plaintiff's decedent was caused to endure conscious pain and suffering, both mental and physical, and death;
   b.  plaintiff LINO was deprived of plaintiff's decedent's comfort, guidance, care, advice, society, services and financial support;
   c.  the above-named children of plaintiff's decedent were deprived of plaintiff's decedent's  advice, care, guidance, comfort, society, services and financial support.
   d.  the estate of plaintiff's decedent was caused to incur various funeral and burial expenses.

WHEREFORE, PLAINTIFF ANNA LINO, AS ADMINISTRATRIX OF THE ESTATE OF EDWARD LINO, DEMANDS JUDGEMENT AGAINST DEFENDANTS THE CITY OF NEW YORK, STEPHEN CARACAPPA AND LOUIS EPPOLITO, IN THE AMOUNT OF $100,000,000.00 DOLLARS, PLUS COSTS AND ATTORNEY'S FEES

## COUNT II

28. Plaintiff LINO reaffirms and realleges paragraphs 1 through 27 above as if specifically affirmed and alleged herein.

29. Prior to and throughout the entirety of the incidents set forth herein, Defendant CITY maintained a custom, policy, or practice of maintaining an inadequate system for identifying, reviewing and disciplining police conduct and corruption which essentially established an environment where corruption went unpunished and left officers and detectives free to carry out corrupt activities including those described herein.

30. Had the CITY had the proper policies in place, EPPOLITO and CARAPPA would not have been able to commit their criminal acts using their badges as a means to corruption and would not have been in a position to provide the information that essentially led to the death of Edward Lino at their own hands.

31. In fact, the then commissioner of the Police Department, Ben Ward continued the policy of tolerating corruption by approving EPPOLITO for a promotion despite the fact that he had been investigated and somehow cleared of leaking information to members of organized crime despite overwhelming evidence.

32. As a result of the CITY's custom, policy, or practice of maintaining an inadequate system for identifying, reviewing and disciplining police conduct and corruption Edward Lino was caused to sustain injuries as well as his death.

WHEREFORE, PLAINTIFF ANNA LINO, AS ADMINISTRATRIX OF THE ESTATE OF EDWARD LINO, DEMANDS JUDGEMENT AGAINST DEFENDANT THE CITY OF NEW YORK IN THE AMOUNT OF $100,000,000.00 DOLLARS, PLUS COSTS

## COUNT III

33. Plaintiff LINO reaffirms and realleges paragraphs 1 through 32 above as if specifically affirmed and alleged herein.

34. At all times relevant to the Complaint, defendant CARACAPPA was an employee of defendant CITY and acted within the scope of his employment.  In particular, CARACAPPA was an employee of defendant CITY in 1986 when he, acting together with EPPOLITO leaked confidential information to members of organized crime which ultimately led to Edward Lino's death.  CARACAPPA was still employed by defendant CITY on November 6, 1990 when he caused the death of Edward Lino.

35. At all times relevant to the Complaint and up to his retirement, defendant EPPOLITO was an employee of defendant CITY and acted within the scope of

his employment.  In particular, EPPOLITO was an employee of defendant CITY in 1986 when he, acting together with CARACAPPA leaked confidential information to members of organized crime which ultimately led to Edward Lino's death.

36. Defendant CITY is liable for the acts of EPPOLITO and CARACAPPA under the doctrine of respondeat superior.

37. At all times relevant to the Complaint, defendant CITY was negligent and/or grossly negligent, which negligence and/or gross negligence includes but is not limited to:

  a. its employing and continuing to employ its co-defendants when it knew or reasonably should have known that defendants CARACAPPA and/or EPPOLITO were connected to, had a relationship with, and were serving the interests of organized crime, including but not limited to said defendants utilizing the resources of, and their position in, the Police Department to cause or contribute to cause the deaths of members of the public;

  b. its permitting its co-defendants to have access to Police Department data bases containing confidential information, when it knew or reasonably should have known that defendants CARACAPPA and/or EPPOLITO were connected to, had a relationship with, and were serving the interests of organized crime, including but not limited to said defendants utilizing the resources of, and their position in, the Police Department to cause or contribute to cause the deaths of members of the public;

  c. its failure to reasonably supervise or monitor its co-defendants;

  d. its failure to reasonably investigate its co-defendants in regard to their connection and relationship with, and servicing the interests of, organized crime, including their utilizing the resources of, and their position in, the Police Department to cause or contribute to cause the deaths of members of the public;

  e. its failure to reasonably discipline its co-defendants;

  f. its failure to maintain reasonable standards for the investigation, discipline and termination of members of the Police Department, including its co-defendants.

38. As a direct and proximate result of the defendant CITY's negligence and/or gross negligence as aforesaid:

  a. plaintiff's decedent was caused to endure conscious pain and suffering, both mental and physical, and death;

  b. plaintiff LINO was deprived of plaintiff's decedent's comfort, guidance, care, advice, society, services and financial support;

    c. the above-named children of plaintiff's decedent were deprived of plaintiff's decedent's advice, care, guidance, comfort, society, services and financial support.

    d. the estate of plaintiff's decedent was caused to incur various funeral and burial expenses.

WHEREFORE, PLAINTIFF ANNA LINO, AS ADMINISTRATRIX OF THE ESTATE OF EDWARD LINO, DEMANDS JUDGEMENT AGAINST DEFENDANT THE CITY OF NEW YORK IN THE AMOUNT OF $100,000,000.00 DOLLARS, PLUS COSTS

## COUNT IV

39. Plaintiff LINO reaffirms and realleges paragraphs 1 through 38 above as if specifically affirmed and alleged herein.

40. The aforesaid conduct of defendants CARACAPPA and EPPOLITO was done in violation of 42 USC 1983, with malicious intent to harm plaintiff's decedent.

41. The aforesaid conduct of defendant CITY was done in violation of 42 USC 1983, with reckless and/or callous indifference to the rights of the public including plaintiff's decedent.

WHEREFORE, PLAINTIFF ANNA LINO, AS ADMINISTRATRIX OF THE ESTATE OF EDWARD LINO, DEMANDS JUDGEMENT AGAINST DEFENDANTS THE CITY OF NEW YORK, STEPHEN CARACAPPA AND LOUIS EPPOLITO, FOR PUNITIVE DAMAGES IN AN AMOUNT TO BE DETERMINED BY THE JURY, PLUS COSTS AND ATTORNEY'S FEES

## COUNT V

42. Plaintiff LINO reaffirms and realleges paragraphs 1 through 41 above as if specifically affirmed and alleged herein.

43. Defendants CARACAPPA and EPPOLITO did intentionally commit assault and battery upon, and false imprisonment of, plaintiff's decedent, and did murder him.

44. As a direct and proximate result of the intentional acts of defendants CARACAPPA and EPPOLITO as aforesaid:

    a. plaintiff's decedent was caused to endure conscious pain and suffering, both mental and physical, and death;

    b. plaintiff LINO was deprived of plaintiff's decedent's comfort, guidance, care, advice, society, services and financial support;

    c. the above-named children of plaintiff's decedent were deprived of plaintiff's decedent's advice, care, guidance, comfort, society, services and financial support.

d. the estate of plaintiff's decedent was caused to incur various funeral and burial expenses.

WHEREFORE, PLAINTIFF ANNA LINO, AS ADMINISTRATRIX OF THE ESTATE OF EDWARD LINO, DEMANDS JUDGEMENT AGAINST STEPHEN CARACAPPA AND LOUIS EPPOLITO IN THE AMOUNT OF $100,000,000.00 DOLLARS, PLUS COSTS

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Dated: Melville, New York
       August 13, 2013

Yours, etc.

By: Michaelangelo Matera

THE MATERA LAW FIRM
560 Broadhollow Road
Suite 303
Melville, New York 11747
(516) 741-6700

8